UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DEMETRIC D. GILLIAM ............................ CIVIL ACTION NO. 06-cv-0321

VERSUS ........................................................ JUDGE HICKS

WARDEN LOUISIANA STATE ................. MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Demetric Gilliam ("Petitioner") of the first degree murder of a three-year-old child. The jury did not unanimously agree on a sentence of death, so Petitioner received a mandatory life sentence. The conviction was affirmed on direct appeal. State v. Gilliam, 827 So.2d 508 (La. App. 2d Cir. 2002), writ denied, 858 So.2d 422 (La. 2003). Petitioner then filed an application for post-conviction relief, which was denied. He now presents a federal petition for habeas corpus relief. It is recommended, for the reasons set forth below, that the petition be denied.

**The Indictment**

Petitioner argues that his indictment was not in compliance with provisions of the Louisiana Code of Criminal Procedure because the minutes do not reflect that members of the grand jury were present during the return or that the minute clerk polled the members of the grand jury. Petitioner's argument to this court is based solely on Louisiana procedural law and provisions of the Louisiana Constitution regarding grand jury procedure. Petitioner

does not argue that the proceedings were contrary to or involved an unreasonable application of clearly established federal law as determined by Supreme Court precedent, as would be required to warrant federal habeas relief. See 28 U.S.C. § 2254(d). Federal habeas corpus "does not lie for errors of state law." Estelle v. McGuire, 112 S.Ct. 475 (1991).

Even if Petitioner's argument could be construed as asserting a federal constitutional claim, Petitioner presented his argument to the state courts in terms of state law, so he did not properly exhaust a federal claim. See Baldwin v. Reese, 124 S.Ct. 1347 (2004). The claim would also lack merit because the sufficiency of a state indictment or bill of information is not a matter for federal habeas corpus relief unless it can be shown that the charging instrument "is so defective that the convicting court had no jurisdiction." Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988). For a charging instrument to be fatally defective, no circumstances can exist under which a valid conviction could result from facts provable under the instrument. State law is the reference for determining sufficiency and if the issue "is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings." Morlett, supra. See also Wood v. Quarterman, 503 F.3d 408, 412 (5th Cir. 2007); McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994). The charging instrument in this case was presented to the state's highest court, so there is no basis for habeas relief with respect to this issue.

**Sufficiency of the Evidence**

Petitioner's sole argument on direct appeal was the sufficiency of the evidence to support his first degree murder conviction. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal, so its decision was not "contrary to clearly established Federal law," and Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" of Jackson. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm

conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

Petitioner told the police that Tyrell Odell had stolen several thousand dollars from Petitioner and Larry White during a dice game the week before the shooting. Petitioner, Larry White, and Terrance Gilliam (Petitioner's brother) saw Odell driving around Queensboro in a burgundy Mitsubishi Galant. The three men began to follow the Galant. Inside the Galant were Eric Calhoun, Odell, Teresa Bryant, three-year-old K.B., and eight-month-old J.B. Odell and Ms. Bryant were the parents of K.B., and they had taken him to get a haircut. After the trip to the barber, Odell began driving around Queensboro looking for marijuana. He found some and smoked a blunt, which is a cigar laced with marijuana.

Odell later pulled into the Hollywood Liquor Bank to get drinks for the children and another cigar for himself. Odell made his purchases, got back in the car, and began pulling out of the parking lot when the Galant was hit from behind by the car containing Petitioner, Larry White, and Terrence Gilliam.

Petitioner had a .45 caliber pistol, Larry White had a 12-gauge pump shotgun, and Terrence Gilliam had an AK-47 rifle. The men began shooting into the Galant, with its

several passengers inside. Odell testified at trial that he looked back and saw Petitioner firing into the car with the pistol. Petitioner gave a statement to police and admitted that he emptied his pistol, then took the rifle and began firing it into the car.

More than 30 rounds were fired into the Galant, and the three adults were all struck and wounded by a combination of the rounds. Eight-month-old J.B. was shot in the left arm. When the shooting started, three-year-old K.B. apparently tried to stand up to see what was happening. He was shot in the back of the head and killed. Forensic testimony indicated that the fatal bullet most likely came from the rifle. The bullet had passed through the windshield and a car seat, which caused it to lose energy so that it did not exit the child's head.

Odell was shot while in the car, and he attempted to flee on foot. As he ran, Petitioner shot him twice more in the legs and hip. Eric Calhoun was also hit while inside the car. He jumped out of the car to run, but he fell. Calhoun testified that Petitioner then stood over him and demanded that he turn over. Calhoun could not turn because of his wounds. Petitioner then shot Calhoun once in the side and once in the rear end.

Petitioner makes a general argument that witnesses were contradictory or inconsistent, but he gives no specific examples that would cast doubt on any of the key facts stated above. Rather, he merely makes a general assertion that the evidence suggests that the most reasonable hypothesis is that someone other than Petitioner shot and killed the three-year-old victim. The state court reviewed the issue at great length on direct appeal and set forth the relevant evidence in much more detail than the summary herein. The court noted that

Petitioner was convicted under La.R.S. 14:30(A)(3), which defines first degree murder as "the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." There was testimony from Teresa Bryant that both Odell and Eric Calhoun got out of the car at the store so that Petitioner and his partners in crime would know that more than one person was inside the car. Petitioner later told police that he believed Odell and Rufus White (also said to be involved in the dice game theft) were in the car and that he intended to shoot them. There was also testimony from Odell and Calhoun that Petitioner shot both of them after they exited the car. In all, more than 30 rounds were fired indiscriminately and at close range, and there is abundant evidence that Petitioner knew that he was shooting at more than one person. This evidence, the appellate court reasonably concluded, supported a conviction for first degree murder.

Petitioner argued to the state court that he did not know the child was in the car and that he did not fire the weapon that killed the child. The state appellate court responded that there was testimony and an admission from Petitioner that he fired the rifle during the shooting. Furthermore, Petitioner could be convicted as a principal to first degree murder even if he did not personally fire the fatal shot so long as he was involved in the commission of the crime and had the requisite intent to kill or inflict great bodily harm upon more than one person. The state court's resolution of the challenge to the sufficiency of the evidence was entirely reasonable, so there is no basis for habeas relief with respect to this issue.

**No Notice of Tyrell Odell's Statement**

The prosecution called Tyrell Odell, the father of the young victim, to testify about the shooting. Tr. 2506. Odell described the events at the scene of the shooting and said he was hit about eight times. Odell admitted that he was, at the time of trial, in jail on an unrelated conviction. Tr. 2527. The prosecutor then stated, outside the presence of the jury, that he intended to illicit from Odell comments that Odell attributed to Petitioner and two other men that were made in jail on August 24, 1998. Specifically, Odell would say that the men told him, "Your baby is dead, and we should have killed you."

The prosecutor stated, "We have previously given this statement in discovery along with all of the other discovery we've given to the defense, but I wanted out of abundance of caution to address this outside the presence of the jury so that we wouldn't provoke an objection in front of the jury." He added that the information came from a statement that Odell made to police on August 24, 1998, which had been tape recorded and transcribed. Tr. 2529-30.

Defense counsel asked to have a "dry-run" on the issue, adding that he was "unclear just reading the transcript of that exactly who he is attributing this to." The prosecutor agreed, and Mr. Odell was asked about the statement. Odell said that he was having a visitor in jail when the three men were escorted nearby on their way to a housing area. Odell said the men said they were "Hoovers" and were flashing gang signs and all three "saying something pertaining to the shooting, saying something - - saying that your baby dead, we

should have killed you and F you, and calling me all kind of names and talking about, this Hoover." Odell said that Petitioner "was the main one" doing the talking. Tr. 2530-33.

One of the defense counsel asked the prosecution to identify the discovery response that included the statement at issue. The prosecutor stated that the transcript was of a taped statement and that she "personally" took the cassette tape with the recording to defense counsel at his home. Defense counsel, Mr. Glassell, conceded that the prosecutor "did bring a bunch of tapes to my home" and suggested that the court proceed. He added:

> I still have those tapes. And if I listen to those tapes and I find that statement on the tape, then obviously we've been given it by discovery. If you allow this to come in and I listen to the tapes and it's not there and I bring it here and I show it's not there, then we get a mistrial, I guess. I don't know.

Tr. 2534-35.

The court stated a preference to address and resolve any discovery issue before the case proceeded and generated an unintended error. Mr. Glassell said it would "take awhile" to resolve the issue of production, but he said that if the prosecution "is comfortable that it's in discovery, ... we'll just make a discovery objection." He added that if he found out later that the tape was not in discovery, "we'll deal with it at that time, I guess." The prosecutor stated that she would check the records and attempt to obtain verification as the trial proceeded on other issues. Tr. 2536-37. Mr. Glassell added that he would "acknowledge she did give me tapes, I have listened to them, I just don't remember if that was in it or not." He added, "If she says it was in it, then it probably is." Tr. 2537-38.

The trial resumed before the jury. On re-direct examination, the prosecutor asked Mr. Odell about seeing the three accused shooters in the jail. Odell testified to the jury that the men said, "We killed your son and we should have killed you." He said it "came from all of them mouth, but it was mostly [Petitioner]." Tr. 2560-61. Defense counsel did not make any objection to the testimony (beyond the earlier objections), but they cross-examined Odell at some length about the alleged setting in which the statement was made. Tr. 2561-66.

Article 768 of the Louisiana Code of Criminal Procedure provides that, unless the defendant has been granted pre-trial discovery, the State must advise the defendant in writing prior to the beginning of the State's opening statement if the State intends to introduce an inculpatory statement in evidence. The article adds that if the State fails to do so, the statement shall not be admissible. Petitioner argued in a post-conviction application that his trial counsel was ineffective for failure to object to the State's lack of pre-trial notice of Tyrell Odell's statement. Tr. 3187. The trial court summarily determined that the allegation failed to meet the Strickland standard and that there was no showing of deficient conduct by counsel. Tr. 3226. The state appellate court denied a writ application, giving the following reasoning:

> The applicant has not shown that the trial court erred in denying the claim that the trial counsel made any error regarding the admission of an inculpatory statement into evidence. Even if no notice was provided and the trial counsel had not objected, the statement would have been subject to harmless error analysis. The applicant gave a confession where he admitted firing a

>pistol and an AK-47 assault rifle into the car where a three-year-old boy was killed. There was sufficient independent evidence other than this inculpatory statement to find applicant guilty of the crime beyond a reasonable doubt. (Tr. 3249-50).

The Supreme Court of Louisiana denied writs without comment. Tr. 3356.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

The test for habeas purposes is not whether a petitioner made the showing required under Strickland. The test is whether the state court's decision – that the petitioner did not make the Strickland showing – was contrary to, or an unreasonable application of, the standards provided by Strickland's clearly established federal law. Williams v. Taylor, 120 S.Ct. 1495 (2000); Henderson v. Quarterman, 460 F.3d 654, 665 (5th Cir. 2006).

The record does not show that the state courts were objectively unreasonable in determining that counsel did not render deficient performance. Counsel raised the objection, but none of the attorneys were able to immediately resolve the issue of production when in the courtroom. Defense counsel and the prosecutor stated their intention to further explore

the issue, but the issue was never again presented. Presumably, defense counsel satisfied himself that the statement had been produced. Thus, it appears that counsel did make an adequate objection. He simply did not have the materials in the courtroom by which the issue could be definitively resolved on the spot.

The state court was also quite reasonable in determining that there was no prejudice even if there was an error by counsel. Petitioner admitted firing two weapons into the car, including one which fired the fatal shot. In light of that and other strong evidence of guilt, there is no doubt that the same verdict would have been returned even had Odell's statement been excluded. Also, there is no indication that a lack of notice rendered the defense unable to appropriately respond to and cross-exam Odell about the testimony. Article 768 requires notice only during discovery or before opening statements. Counsel received notice and a live "dry-run" of the testimony before it was presented to the jury, which was likely just as if not more useful to the defense than a mere one-sentence notice of the substance of Odell's statement or a copy of the tape or transcript served as part of a discovery response. No relief is merited with respect to this claim.

**Bill of Information**

Petitioner was indicted by a grand jury on a charge of first degree murder. The State issued a number of amended indictments to correct the spelling of the victim's name, specify subsections of the statute under which Petitioner was charged, add aliases, and the like. See Tr. 14-17. Petitioner argued in his post-conviction application that his trial counsel was

ineffective because he did not object to the State's institution of the prosecution by "bill of information." Tr. 3123-28.

The trial court ruled that the record "clearly shows that no bill of information was utilized in this case." Rather, the grand jury returned an indictment, and the prosecution later filed amended indictments that the trial court said were "clearly authorized" and did not affect the validity of the conviction. Defense counsel, therefore, was not ineffective for not challenging the charging instrument. Tr. 3227. The state appellate court generally agreed and found that the trial court was correct to deny the claim. Tr. 3249.

Petitioner presents the same argument to this court, but he has yet to articulate a factual or legal basis that would demonstrate that the state court was wrong in its assessment of the issue. Furthermore, there is no <u>Strickland</u> prejudice when counsel does not object to a grand jury procedural defect if the state could have easily obtained a new and valid indictment or issued an otherwise valid charging instrument. <u>Pickney v. Cain</u>, 337 F.3d 542 (5th Cir. 2003). There is no showing that counsel committed any error in this respect, and there is certainly no basis for a finding of prejudice.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of January, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE